Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave.
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff* and the Class

UNITED STATES DISTRICT COURT

DISTRICT OF NEBRASKA

| | |
|---|---|
| TERRENCE SHANAHAN, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>UPPER MIDWEST REALTY INC. DBA EXIT REALTY UPPER MIDWEST, a Minneapolis Corporation, and John Doe 1<br><br>Defendant. | Case No.:  8:19-cv-00359<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## **CLASS ACTION COMPLAINT**

1.      Plaintiff TERRENCE SHANAHAN ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant UPPER MIDWEST REALTY INC. DBA EXIT REALTY UPPER MIDWEST ("Defendant or Exit Realty"), a Minneapolis Corporation, and Defendant JOHN DOE 1, unknown entity to stop their illegal practice of making, and permitting to be made on their behalf, unauthorized telephone calls using an automatic dialing system to the cellular telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as

1

follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

2.    In the course of advertising employment opportunities and real estate services, Defendant and Defendant's authorized agents including Defendant John Doe 1, placed thousands of automated calls to consumers' cell phones nationwide.

3.    Defendant and Defendant's authorized agents including Defendant John Doe 1, did not obtain consent prior to placing these calls and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4.    Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

5.    The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant's use of technological equipment to spam consumers with its advertising on a grand scale.

6.    By placing the calls at issue, Defendant and Defendant's authorized agents including Defendant John Doe 1, have violated the privacy and statutory rights of Plaintiff and the Class.

7.    Plaintiff therefore seeks an injunction requiring Defendant and Defendant's authorized agents including Defendant John Doe 1, to stop its unconsented calling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

8.    Plaintiff TERRENCE SHANAHAN is a natural person and is a citizen of the District of Nebraska.

9.      Defendant UPPER MIDWEST REALTY INC., DBA EXIT REALTY UPPER MIDWEST is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business at 20765 Holyoke Avenue, Lakeville, Dakota County, Minnesota 55044.

10.     Defendant John Doe 1 is an unknown individual or entity.

## JURISDICTION AND VENUE

11.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

12.     This Court has personal jurisdiction over Defendant because it placed phone calls into this District and in the State of Nebraska and because the events giving rise to this lawsuit occurred in this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant regularly conducts business in the State of Nebraska and in this District, and because the wrongful conduct giving rise to this case substantially occurred in this District.

## COMMON FACTUAL ALLEGATIONS

14.     Defendant Exit Realty is a real estate agent or brokerage.

15.     Defendant John Doe 1 is an authorized agent of Defendant Exit Realty.

16.     As a way to cut corners yet also increase its advertising reach, Defendant and its authorized agents, including John Doe 1, repeatedly called thousands of cellular and residential phones at a time using an automatic telephone dialing system in violation of the TCPA.

17.     When the Class members answered their cellular phones, they heard silence for several seconds and a distinct "click" sound before being transferred to a live agent, which denotes the use of an automatic telephone dialing system.

18.     Defendant and its authorized agents including John Doe 1, failed to obtain consent from Plaintiff and the Class before bombarding their phones with their illegal advertising.

**FACTS SPECIFIC TO PLAINTIFF TERRENCE SHANAHAN**

19.     On or about July 3, 2019, Plaintiff received a call on his cellular phone number ending in 1146.

20.     The Caller ID displayed that the phone number originated from 520-277-9156.

21.     When Plaintiff answered his phone, Plaintiff said "hello" several times, but there was silence for approximately 4 seconds. Plaintiff then heard a "click" sound. There was an additional silent delay after the distinct "click" before a live agent answered.

22.     Upon information and belief, the technology used to robocall Plaintiff had the capability to store phone numbers and dial those numbers automatically.

23.     The live agent informed Plaintiff that he was calling on behalf of Defendant Exit Realty and advertising Defendant's Exit Realty's services. The live agent gave Plaintiff some information about Defendant Exit Realty and asked if Plaintiff would be interested in more information.

24.     In order to investigate the company calling, Plaintiff agreed to receive more information about Defendant Exit Realty. The live agent told Plaintiff that he would be sending Plaintiff a video regarding Defendant Exit Realty and that one of his partners would follow up.

25.     On or about July 10, 2019, Plaintiff received a follow up telephone call from a real estate agent with Defendant Exit Realty. Plaintiff did not answer the telephone call as Plaintiff did not recognize the telephone number 612-702-1869. Defendant's voicemail stated, in pertinent part, "Hi this is for Terry. This is Cade from Upper Midwest Realty. We had one of our associates reach out and connect with you here last week …"

26.     Plaintiff never consented to be contacted by Defendants.

27.     Prior to the robocall, Plaintiff had no relationship with Defendants.

28.     Defendants violated Plaintiff's statutory rights and his right to privacy.

**CLASS ALLEGATIONS**

29.     **Class Definition**: Plaintiff Shanahan brings this action pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), and/or 23(b)(3) on behalf of himself and a class defined as follows:

> **TCPA Class**.  All persons in the United States who: (1) from the last 4 years to present (2) who received at least one telephone call; (3) on his or her cellular or residential telephone; (4) that used an automatic telephone dialing system; (5) for the purpose of promoting Defendant's services; (6) where Defendant did not first obtain the person's express written consent.

30.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

31.     **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

32.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

33.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the

other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

34.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

35.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

i.      Whether Defendant Exit Realty and Defendant John Doe 1's conduct violated the TCPA;

ii.     Whether Defendant Exit Realty and Defendant John Doe 1's conduct violated the TCPA *willingly* and/or *knowingly*;

iii.    Whether Defendant Exit Realty and Defendant John Doe 1's used an automatic telephone dialing system to place calls to thousands of cell phones;

iv.     Whether Defendant Exit Realty and Defendant John Doe 1's obtained prior written consent prior to contacting any members of the Class;

v.      Whether members of the Class are entitled to treble damages based on the knowingness or willfulness of Defendant Exit Realty and Defendant John Doe 1's conduct.

36.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant Exit Realty and Defendant John Doe 1's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant Exit Realty and Defendant John Doe 1's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

### BASIS FOR LIABILITY

Plaintiff alleges that even if Defendant Exit Realty did not make the TCPA violating robocall to Plaintiff directly, Defendant Exit Realty is liable under the First, Second and Third Causes of Action under the following theories of liability (1) Direct Liability, (2) Actual Authority (3) Apparent Authority (4) Ratification (5) Acting in Concert, and (6) Joint Enterprise.

### (1) DIRECT LIABILITY UNDER THE TCPA

37.     Defendants' scheme involves the use of illegal robocalling to promote their services.

38.     Whether Defendant Exit Realty called Plaintiff directly or Defendant hired Defendant John Doe 1 to call Plaintiff using an automatic telephone dialing system, Defendants are directly liable to Plaintiff for violating the TCPA.

7

39.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.  As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy. *May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

## AGENCY ALLEGATIONS

40.     The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n. 107.

41.     Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to identify the exact party who called his cellular phone whether it was Defendant Exit Realty, Defendant John Doe 1 or some other unknown company.

42.     However, for the purposes of TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

43.     The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

44.     Even if Defendant Exit Realty alleges that it did not personally make the TCPA-violating calls, Defendant Exit Realty is liable because it took steps to cause the calls to be made by hiring a third party to market the services Defendant Exit Realty, or because the calls were made pursuant to Defendant Exit Realty's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

## (2) ACTUAL AUTHORITY

45.     Defendant Exit Realty authorized Defendant John Doe 1 to generate prospective customers.  Defendant Exit Realty's integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that Defendant John Doe 1 was the telemarketing department of Defendant Exit Realty.

46.     Defendant John Doe 1 was hired by Defendant Exit Realty and acted in concert with Defendant Exit Realty, which permitted Defendant Exit Realty to enjoy the benefits of mass robocalling while moving the illegal activity "outside their purview."

47.     Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

48.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

49.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for

telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

50.     Defendant John Doe 1 solicited Plaintiff on behalf of Defendant Exit Realty and had actual authority from Defendant Exit Realty to solicit Plaintiff by using an automatic telephone dialing system.

51.     Defendant Exit Realty admitted that it had given actual authority to Defendant John Doe 1 to contact Plaintiff to solicit Defendant's services when it represented to Plaintiff that an "associate" of Defendant Exit Realty had contacted Plaintiff.

52.     Defendant John Doe 1 informed Plaintiff that it had actual authority to contact Plaintiff on behalf of Defendant Exit Realty, when it informed Plaintiff that it was calling on behalf of Defendant Exit Realty and that one if Defendant Exit Realty's "partners" would be contacting Defendant within a week.

### (3) APPARENT AUTHORITY

53.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

54.     Defendant Exit Realty authorized Defendant John Doe 1 to generate prospective customers for them.

55.     The integration of their sales efforts with robocalling by Defendant Exit Realty used was so seamless that it appeared to Plaintiff that Defendant John Doe 1 was one and the same company with Defendant Exit Realty.

56.     Plaintiff reasonably believed and relied on the fact that Defendant John Doe 1 had received permission to sell, market and solicit Defendant Exit Realty's services.

### (4) RATIFICATION

57.     Defendant Exit Realty knowingly and actively accepted business that originated through the illegal robocalls placed by Defendant John Doe 1.

58.     By accepting these contacts, Defendant Exit Realty "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendant John Doe 1, as described in the Restatement (Third) of Agency.

59.     Defendant Exit Realty ratified Defendant John Doe 1's TCPA violations by knowingly accepting the benefit of a potential new customer entered into their computer databases, despite that these records were generated illegally.

60.     Defendant Exit Realty took advantage of the violations by having their salespeople solicit the prospective customers while turning a blind eye to the way the potential customer was identified.

61.     Defendant Exit Realty ratified Defendant John Doe 1's TCPA violations by being willfully ignorant of the violations or by being aware that such knowledge was lacking.

62.     Defendant Exit Realty's ratification caused Defendant John Doe 1 to have the actual authority of Defendant Exit Realty.  Restatement § 4.01 cmt. b.

**(5) JOINT ENTERPRISE**

63.     Defendant Exit Realty had a tacit agreement or approved of after the fact with Defendant John Doe 1 for the marketing of their services pursuant to Defendant John Doe 1's illegal robocalls.

64.     Defendants were part of a common enterprise and had a community of interest in marketing and advertising for employment opportunities with Defendant Exit Realty.

65.     Defendants had an equal right to control the conduct thereof by specifying the type of people to be called and the questions that should be asked to prospective consumers.

66.     Defendants had a duty to exercise due care when marketing their products.

67.     Defendant John Doe 1's violation of the TCPA is negligence per se.

68.     Because of Defendant John Doe 1's negligence, Plaintiff suffered actual and statutory damages.

69.     Defendant Exit Realty is jointly and severally liable for the resulting damage caused by Defendant John Doe 1's TCPA-violating telephone calls.

**(6) ACTING IN CONCERT**

70.     Defendants were part of a common design to robocall consumers and then advertise and market Defendant Exit Realty's services and employment opportunities with Defendant Exit Realty.

71.     Defendant Exit Realty had a tacit understanding that Defendant John Doe 1 was robocalling in violation of the TCPA.

72.     Defendant Exit Realty knew that Defendant John Doe 1's conduct was a breach of duty to Plaintiff.

73.     Defendant Exit Realty gave Defendant John Doe 1 substantial assistance in accomplishing the tortious result, including compensating Defendant John Doe 1 for generating customers pursuant to robocalls and giving instructions on how to represent them and what to ask the people that had been robocalled.

8:19-cv

74.     Defendant Exit Realty furthered the tortious conduct by their cooperation with Defendant John Doe 1 and adopting Defendant John Doe 1's robocalling and solicitation for their own benefit.

75.     Defendant Exit Realty's own conduct constitutes a breach of duty to Plaintiff.

76.     Plaintiff's injury is indivisible.

77.     All Defendants acted tortiously and the harm resulted from the robocalling of Defendant John Doe 1.

78.     Defendant Exit Realty are joint and severally liable for the resulting damage caused by John Doe 1.

**CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**Telecommunications Consumer Protection Act**
**(On behalf of Plaintiff and the Class against all Defendants)**

79.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

80.     Defendants and/or its agents placed calls using an automatic telephone dialing system to Plaintiff's and the Class members' cellular telephones without having their prior express written consent to do so.

81.     The system used by Defendants to place such automated calls had the capability to store a list of numbers and automatically dial those numbers.

82.     Defendant Exit Realty's and Defendant John Doe's calls were made for the purpose of advertising and marketing employment opportunities and realty services with Defendant Exit Realty.

83.     Defendants used an automatic telephone dialing system as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B) to generate Plaintiff's phone number as well as the phone numbers of the Class members.

84.     As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling

13

them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop their illegal calling campaign.

85.     Defendants made the violating calls "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

86.     If the court finds that Defendants *willfully* and/or *knowingly* violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff TERRENCE SHANAHAN, individually and on behalf of the Class, prays for the following relief:

A.     An order certifying the Class as defined above, appointing Plaintiff TERRENCE SHANAHAN as the Class representative and appointing his counsel as Class Counsel;

B.     An order declaring that Defendants' actions, as set out above, violate the TCPA;

C.     An order declaring that Defendants' actions, as set out above, violate the TCPA *willfully* and *knowingly*;

D.     An injunction requiring Defendants to cease all unlawful calls without first obtaining the call recipients' prior express written consent to receive such calls, and otherwise protecting interests of the Class;

E.     An award of actual damages and/or statutory fines and penalties;

F.     An award of reasonable attorneys' fees and costs; and

G.     Such other and further relief that the Court deems reasonable and just.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: August 21, 2019

                         Respectfully submitted,


                         TERRENCE SHANAHAN, individually and on
                           behalf of all others similarly situated,


                         By:  /s/ Mark L. Javitch                .
                         Plaintiff's Attorney

                         Mark L. Javitch (California SBN 323729)
                         480 S. Ellsworth Ave.
                         San Mateo CA 94401
                         Tel: 650-781-8000
                         Fax: 650-648-0705

                         *Attorney for Plaintiff* and the Putative Class